**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RBC NICE BEARINGS, INC., ET AL. | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 3:06-CV-1880 (JCH) |
| | : | |
| v. | : | |
| | : | |
| SKF USA INC., | : | FEBRUARY 24, 2011 |
| Defendant. | : | |

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**
**(Doc. Nos. 192, 195)**

## I.     INTRODUCTION

On September 10, 2010, defendant, SKF USA, Inc. ("SKF"), filed a Motion for

Summary Judgment (Doc. No. 192).  Plaintiffs, RBC Nice Bearings, Inc., Roller Bearing

Company of America, Inc., and RBC Nice Bearings, Inc. d/b/a Nice Ball Bearings, Inc.

(collectively "RBC"), filed an Opposition to SKF's Motion, as well as a Cross-Motion for

Summary Judgment (Doc. No. 195).  For the following reasons, the court grants SKF's

Motion in part and denies it in part.  The court grants RBC's unopposed Motion in full.

See Def.'s Reply at 7-8 (Doc. No. 198).

## II.    DISCUSSION

SKF seeks judgment on each of RBC's claims for a number of reasons.  For the

purposes of this Order, however, the court need only address two.  With respect to

Count One, RBC's copyright claim, which could not be brought in state court, SKF

argues that it is entitled to summary judgment on the ground that RBC is collaterally

estopped as a result of Judge Miller's conclusion that RBC wrongfully terminated its

contract with SKF.  See RBC Nice Bearings, Inc. v. SKF USA, Inc., No. X03-CV06-

5009720-S, slip op. at 2 (Conn. Super. Ct., July 23, 2010) (Doc. No. 193-1). With respect to Counts Two through Fourteen, SKF argues that RBC's claims are barred under the principle of res judicata, in light of the completion of the parties' related case in the Connecticut Superior Court. For the reasons stated below, the court disagrees with SKF with respect to Count One, but agrees with respect to Counts Two through Fourteen.

A.    Count One—Collateral Estoppel

SKF concedes that Count One of the operative Complaint, alleging copyright infringement, could not have been litigated in state court. Def.'s Mem. 7 n.2; see 28 U.S.C. § 1338(a) (granting federal district courts exclusive jurisdiction over copyright claims). Therefore, unlike Counts Two through Fourteen, discussed infra, Count One cannot be barred by res judicata. See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 600 F.3d 190, 195 (2d Cir. 2010) (noting that res judicata precludes the re-litigation of issues "that were or could have been raised" in a prior action).

SKF argues, instead, that, in order for RBC to succeed on its copyright claim, it is required to prove that it justifiably terminated its contract with SKF. Def.'s Mem. 8-9. In his ruling at the conclusion of the Connecticut state case between RBC and SKF, Judge Miller concluded that RBC wrongfully terminated its contract with SKF. RBC  Nice Bearings, Inc., slip op. at 2. Therefore, according to SKF, under the doctrine of collateral estoppel, this issue cannot be re-litigated by the losing party. See Tracy v. Freshwater, 623 F.3d 90, 99 (2d Cir. 2010) ("Collateral estoppel 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action

2

or proceeding and decided against that party.'" (quoting <u>Sullivan v. Gagnier</u>, 225 F.3d 161, 166 (2d Cir. 2000)).

This conclusion, however, would require the court to reopen an issue previously decided in this case. During its review of RBC's Motion for Preliminary Injunction, the court considered and rejected SKF's view that, in order for RBC to succeed on its intellectual property claim, it would have to prove that SKF breached the parties' contract. Oral Argument Tr. 41:3-8, Feb. 28, 2008 (Doc. No. 195-16). Instead, the court held that, regardless of whether RBC properly terminated the contract, once a termination was effective, intellectual property violations could occur. <u>Id.</u>

Rather than arguing that the court should revisit this issue, SKF suggests that RBC has abandoned its previous argument on this issue because of statements made before an arbitration panel in a separate dispute between the parties. Def.'s Reply at 2-3. Accordingly, SKF argues that RBC should be prevented, under the principle of judicial estoppel, from successfully maintaining two contrary arguments and gaining an inequitable advantage.

The court rejects this theory. The first requirement of a claim of judicial estoppel is that a party's current position be "clearly inconsistent" with an earlier one. <u>See</u> <u>Adelphia Recovery Trust v. HSBC Bank USA, N.A. (In re Adelphia Recovery Trust)</u>, Nos. 09-0799-bk, 09-0808-bk, 09-810-bk, 2011 WL 420428, at *14 (2d Cir. Feb. 9, 2011). The Second Circuit has further limited judicial estoppel claims "to situations where the risk of inconsistent results . . . is certain." <u>Id.</u> Contrary, to SKF's contentions,

RBC's statements at arbitration appear entirely consistent with its arguments in this case.

At the arbitration proceeding, counsel for RBC stated: "The intellectual property claims stem from our termination of the contract . . . and stem from SKF's conduct after termination." Oral Argument Tr. 92:12-16, Dec. 18, 2009 (Doc. 193-1). Shortly after this statement, he went on to say, "In our view, a suit on the Sales and Supply Agreement [SSA] and SKF's use of trademark rights after the termination of the [SSA] stems from the [SSA] and SKF's status as our former exclusive distributor and does not arise out of the Asset Purchase Agreement [APA] . . . ." Id. at 94:1-9. While the court only has the benefit of a partial transcript, it seems clear that RBC was distinguishing the present action—arising under the SSA—and its action in arbitration—arising under the APA. RBC nowhere in these statements altered its position that its intellectual property claims were independent of a determination that the SSA was wrongfully terminated. Instead, counsel noted that their present claims stem from the termination of the contract, whether such termination was justified or not. This view is entirely consistent with RBC's prior position and this court's previous determination. Defendants' arguments to the contrary are erroneous at best and disingenuous at worst.

For these reasons, the court denies SKF's Motion for Summary Judgement with respect to Count One.

B.     Counts Two Through Fourteen—Res Judicata

The doctrine of res judicata prevents a party from bringing the same case multiple times. Thus, "'[a] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action.'" Duane

4

Reade, 600 F.3d at 195 (quoting Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997)).  Such a final judgment extinguishes "'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the [previous] action arose.'"  Id. (quoting Restatement (Second) of Judgments § 24(1)); accord Weiss v. Weiss, 297 Conn. 446, 459 (Conn. 2010) ("Res judicata 'prevents a litigant from reasserting a claim that has already been decided on the merits. . . .  Under claim preclusion analysis, a claim—that is, a cause of action—includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. . . .  Moreover, claim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or might have been made.'" (quoting LaSalla v. Doctor's Assocs., Inc., 278 Conn. 578, 590 (2006) (alterations in original) (emphasis removed)).

The parties in this case litigated for several years before the Superior Court in Connecticut.  The background information in the operative Complaint in that case and RBC's Amended Complaint in the present case are virtually identical.  See Am. Compl. ¶¶ 8-58 (Doc. No. 46); Am. Compl. ¶¶ 5-49, RBC Nice Bearings, No. X03-CV06-5009720-S (Ct. Super. Ct., Sept. 17, 2008) ("Super. Ct. Am. Compl.") (Doc. No. 193-1).  Both complaints describe a contract between the parties for the supply of ball bearings products, an alleged breach of that contract, the contract's subsequent termination, and continued use and sale of the products in question.  Am. Compl. ¶¶ 8-58; Super. Ct. Am. Compl. ¶¶ 5-49.  It is not difficult to conclude that final judgment in the state court

case, thus, precludes every claim in the present case that could have been brought in the state court proceeding. Counts Four through Fourteen are state law claims, which clearly could have been brought in the state court action. Counts Two and Three are trademark claims pursuant to the Lanham Act, 15 U.S.C. § 1051, et seq., which also could have been brought in state court. See Berlitz Schs. of Languages of Am., Inc. v. Everest House, 619 F.2d 211, 216 (2d Cir. 2010) (noting that state and federal courts have concurrent jurisdiction over Lanham Act claims).

RBC argues that its claims are not barred by res judicata, because they arose after their Complaint was filed in the state case in June 2006. See Pls.' Opp. 3-4, 7-8. According to RBC, it did not learn that SKF was continuing to sell NICE bearings until late 2006, after which point they filed their federal claims. Id. at 3. Additionally, RBC alleges that it was not until 2007 and 2008 that it discovered the full scope of SKF's infringing activity. Id. at 3-4.

RBC's arguments to this effect are belied by their Amended Complaint in the Connecticut court case, which was filed in September 2008. See generally Super. Ct. Am. Compl. In Counts Ten, Eleven, and Twelve, RBC states causes of action under the Connecticut Unfair Sales Practices Act, and for the tortious interference with business relations and the usurpation of corporate opportunity. Id. at ¶¶ 90-97. Each of these claims is based on allegations of continued use of Nice bearings after the termination of the contract and continued interactions with RBC's customers or potential customers. Id. at ¶¶ 43-44, 90-97.

RBC's reliance on cases such as <u>Storey v. Cello Holdings, L.L.C.</u>, 347 F.3d 370 (2d 2003), and <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280 (2d Cir. 2002), is misplaced. These cases stand for the prospect that claims arising subsequent to the entry of judgment in a prior action are not barred by <u>res judicata</u>. <u>See</u> <u>Storey</u>, 347 F.3d at 383; <u>Simon</u>, 310 F.3d at 287. RBC, however, acknowledged that it was fully aware of all pertinent conduct by the defendants as of early 2008. <u>See</u> Pls.' Opp. 3. RBC successfully amended its state law Complaint in September 2008—when it appears to have added Counts Ten, Eleven, and Twelve—and the judgment in that case was not entered until July 2010. Therefore, in light of its Amended Complaint, RBC's arguments that its present claims and those resolved in the Connecticut Superior Court case did not arise out of the same transaction or series of transactions are plainly wrong. Counts Two through Fourteen all raise issues that were—or certainly could have been—litigated in the state court action.

For these reasons the court grants SKF's Motion for Summary Judgment with respect to Counts Two through Fourteen of the Amended Complaint.

## III.    CONCLUSION

For the foregoing reasons, the court denies defendant's Motion for Summary Judgment (Doc. No. 192) in part with respect to Count One, and the court grants defendant's Motion in part with respect to Counts Two through Fourteen. The court also grants plaintiffs' unopposed Cross-Motion for Summary Judgment (Doc. No. 195), as to SKF's Counter-Claims.

The court further ORDERS parties to file a Joint Trial Memorandum, as

described in the court's previous Scheduling Order (Doc. No. 35), within fourteen (14) days of this Order.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 24th day of February, 2011.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge